Scott, J.
In construing the will before us, it is our duty to give effect to the intention of the testator when clearly ascertained from its language, if such intention be consistent with law and public policy. Looking to the general scheme of disposition disclosed by the will, we think it apparent that the purpose and intention of the testator was to make what he judged to be a suitable provision for the support of his wife during her life; but subject to eer *578 tain conditions, to which, if she should decline to accede, and should prefer to claim her statutory rights of dower, etc., then she should be remitted to those statutory rights alone, and should take nothing by his will. In carrying out this purpose, by the first item of his will he devises all the real estate therein mentioned to her for life, but if she declines this gift clogged with the conditions annexed thereto, then he says “ she is to receive but her dower in said property.”
Coming then to the second item of the will, which is the one here in controversy, we find that it relates to all his personal property, other than the household furniture, goods, etc., embraced in the first item, and that it consisted probably of money, notes, bonds, etc., of fixed and readily ascertainable values, for he says it amounts to two thousand dollars. He directs the principal of this sum to be kept in the hands of his executors, the interest arising from it to be applied to his wife’s support; and then adds that “if at any time she desires her dower set off” (that is, if she asserts her statutory right to dower, including the distributive share of this two thousand dollars, awarded to her by the statute), “then the balance is to be shared equally among my heirs.” We think the language leaves no room for doubt that the testator did not regard his wife as his heir, and that he intended aud willed that if his wife chose to assert her right under the statute to the widow’s share of this two thousand dollars, then, after giving her such share, “the balance” (or residue thereof) should be distributed equally among other persons, whom he designates as his heirs. The word “ heirs ” is a flexible one, and when used in a will, should be so construed as to give effect to the manifest intention of the testator. It has often been properly held to mean “ next of kin,” and should be so understood whenever the context so requires. 2 Redfield on Wills, 67. The sense in which the term “ heirs ” is used in a will is always open to inquiry. Bailey v. Patterson, 3 Rich. Eq. Cases, 156; Evans v. Godbold, 6 Ib. 26.
In ascertaining the intention of the testator, no account *579 can be taken of circumstances which clo not appear to have been known to him when the will was made. Hence, the fact that his wife was pregnant when t'he will was executed, can not affect its construction, unless it appear that this was known to him, or was at least suspected by him at the time. In this case, the fact of such knowledge or suspicion is not alleged in any of the pleadings — not even in the answer of the widow — and is not found by the court below. And the language of the will very strongly negatives the idea of such knowledge or suspicion on his part. The will not only contains no reference to the possible pregnancy' of the wife, which would be singular if the fact were known to, or suspected by, him; but the bequest is, that “ the balance is to be shared equally among my heirs.” This language indicates clearly that the testator supposed he would have not less than two, or if force be given to the word “ among,” then not less than three heirs. Are we to presume from this language, that, without any reference to the subject in the will, the testator not only supposed his wife to be pregnant, but that she would bring forth twins, or triplets ? The mere fact that the widow was, two months thereafter, delivered of a dead child, however premature such delivery may have been will not justify the inference that the testator was aware of the pregnancy when the will was made; especially, when the language of the will indicates the contrary.
But suppose the testator was aware of his wife’s pregnancy, when the will was made; yet, if it clearly appear that he did not regard her as an heir, then, in a bequest to his heirs, she can not be regarded as a legatee. And in ascertaining who are designated by the term “ heirs,” she must be excluded from the number.
■ The testator left four brothers and two sisters surviving at his death, and even if he knew his wife to be pregnant, he could not know that, she would be delivered of a living child. He bequeathed a certain sum “ to be shared equally among his heirs.” Now, if it appear, as we think it does, that his wife was not to be regarded as an heir of his per *580 sonalty, it makes no difference whether we consider the words “ my heirs,” by which the legatees are described, as meaning “ my next of kin,” or “ my heirs (according to the statute of distribution), exclusive of my wife.” The bequest is in either case, under the facts of this case, to the testator’s brothers and sisters. Eor the posthumous child not having been born alive, they were his next of kin, and were also his heirs, under the statute of descent and distribution, if his wife is not to be regarded as his heir. We can have no doubt, from the language of the will when applied to the facts shown by the record, that by his “ heirs ” the testator meant his “next of kin,” whether children or brothers and sisters. Rachel Jones, the widow, having elected not to take under the will of her husband, must be remitted to her statutory rights as a widow. The statute in force at the time of her husband’s death gives her dower, and such share of the personal estate of her husband as she would be entitled to by law in case her husband died intestate, leaving children. S. & C. 1624, § 44. A prior statute provides that if an intestate shall have left a child, the widow shall be entitled, upon distribution, to one-half of any sum not exceeding four dollars, and to one-third of the residue of the personal estate subject to distribution. S. & C. 601, § 175.'
The judgment of the district court must be reversed, and proceeding to render such judgment as that court should have rendered, we direct and adjudge that of the moneys coming into the hands of the administrator, under the second item of testator’s will, and remaining after payment of debts, and costs of administration, distribution to be made as follows, to wit: First. The costs of this suit, including the costs of this proceeding in error, shall be fully paid. Second. That of the remainder of said fund, one-half of the first four hundred dollars, together with one-third of the residue, shall be paid to the said widow, Rachel Jones, and that the residue of said fund be equally distributed among the brothers and sisters of said testator, share and share alike.
*581 In regard to the property devised by the first item of the will, which, as we understand it, is not here drawn in question, and was not passed upon by the court below, we express no opinion.